The next case today is Town of Milton v. Federal Aviation Administration et al. Appeal number 22-1521 Attorney North, please introduce yourself for the record and proceed with your argument. May it please the court. Paris North for the petitioner of Town of Milton and I would like to reserve three minutes for rebuttal if I may. You may. You may have three minutes. Thank you, Your Honor. So, this case concerns Milton's request that this court send back to the FAA for a full environmental impact statement rather than relying on its abbreviated environmental assessment process. The FAA's review of the four-left RNAV, which overflies the Town of Milton into Logan Airport. As just a little bit of background, an RNAV is a GPS-based procedure for arrivals and departures at Logan Airport. And as compared to ground-based procedures, it results in a narrow highway in the sky with the associated impacts such as noise, pollution, disturbance over a narrower area as compared to the previous approach, which was a much more dispersed approach. And if you take a look at Exhibit 7 in the Congressman Lynch's amicus brief on page 155, you can see an example of the prior dispersal of the approaches versus in the appendix on page 90, you can see what the more narrowed approach looks like. So, this petition meets the high standard that has to show abuse of discretion or that the decision is arbitrary and capricious after an agency hard look. Ms. North, before you get to the merits of your case, it seems to me that there's a substantial preliminary issue here that's jurisdictional in nature, and that is whether the Town of Milton has standing to pursue this petition. Would you address that at the outset before you get to the merits? Certainly, Your Honor. I'd be happy to. So, in the standing analysis, the Town of Milton must show that it has suffered from harm and that harm is able to be redressed by its request to this court. And we submit in the petition and in the record, Milton has laid out significant harm that it itself has suffered from the imposition of this RNAV. One of the helpful documents to take a look at is the Town of Milton's comment letter on the draft environmental impact statement that is somewhat addressed by the FAA, and that's at page 2013 of the appendix, and also fully reproduced in the addendum of the opening brief at pages 190 to 299. So, the harm is to the Town of Milton, not just to its citizens. The harm is certainly no different than the harms that... I'm sorry, before you say it's no different, what harm are you talking about? Certainly. So, we're talking about harm to the town by expenditure of resources. It has bought and used noise monitors to get its own sense of the noise over the town. It has diverted staff from its statutory responsibilities and, you know, relying on a limited budget to deal with noise issues involving the town. It has created an airplane noise... I'm sorry, on your second point, diverted staff from statutory responsibilities? Are you suggesting that what they were diverted to was something not authorized by state law? No, Your Honor. I'm saying that the town has limited resources and has statutory responsibilities and a limited budget, and it was forced to utilize some of its staff to deal with airplane issues. But the town makes choices all the time about where it's going to spend money. How is that harm to give you the right to sue under Article 3? Your Honor, it's harm because it's an impact to the town, the corporate entity, by all of these various expenditures, again, have been diversions, have been... Ms. North, a party that doesn't have standing can't confer standing upon itself simply because it chooses to expend funds to contest or involve itself in a particular action. Standing is something that exists organically. It's not something that you can confer simply by making the decision that we're going to expend funds. I can't confer standing on myself to protest the zoning decision that occurs several miles from my own property simply by becoming an objector and hiring a lawyer and throwing a lot of money at the problem. I agree, Your Honor, but I think that here, this is not simply hiring a lawyer and throwing money at a problem. This is an impact that is felt within the community where residents have indicated that they have left the community. Counsel, you have no residents of Milton as petitioners in this lawsuit. In every circuit case like this, there were petitioners who had standing, and if there weren't such petitioners, there was no standing because there is no harm to the town. So early in standing law, sometimes federal courts kind of bypass the question, but the Supreme Court has tightened up on standing, and we're no longer free just to assume hypothetically that you have suffered harm and therefore you have standing. So again, putting aside the, you chose to spend money monitoring and hiring lawyers and filing petitions, put all of that aside. What else is there? Yes, Your Honor. So in addition, there are citizens who have sold their homes and indicated that they've sold their homes because of the noise in the town, which implicates the reputation of the community. There is the Airplane Noise Advisory Committee that the town has created, which is committed to working on airplane noise issues on behalf of the town with the FAA, with Massport, with the other agencies that are relevant. That is all documented in the record. Tell me about the citizens who sold their homes. What evidence of that is there? There is evidence in the comment letter. Specific instances of citizens who have sold their homes? There is recounting of specific instances of citizens who have sold their homes. And those homes have not been able to be resold? Isn't it a mere fact that the homes were sold, an indication that unless the comment letter also says that they were sold for lesser prices and reduced your tax revenue, and I don't think it does, how is that hard? Your Honor, we're not arguing diminution of property value. We're arguing reputational harm. How is it reputational harm? If the home was sold, it means someone bought the home, so the town's reputation is apparently intact. It's correct, but good people are leaving because of this issue. And the people who are coming in are not good people? No, no, obviously not.  Unless there's either a diminution of the tax base or an inability to attract good purchases for the real estate, or the real estate is sitting unsold. I mean, it's got to be something more than just a blanket allegation that citizens have sold their homes. Counsel, is there any evidence that property prices have dropped in Milton? Unlike every other community around Boston? No, Your Honor, we're not making that assertion. Okay, so your tax revenues have not in fact diminished, correct? Correct. Okay, so I think you mentioned an advisory committee? Yes, Your Honor. How is that different than the fact that you made decisions about expending resources to put in monitors and file petitions and the rest? Well, it's the creation of a public municipal body to deal with a problem that is entirely at the town's discretion, but is something that the select board felt was important to do. And, yes, it's similar to the noise monitors as well, but it takes it a step further to create this process by which the town can have a public voice in this process and to discuss and assert its concerns to the FAA Massport about the overflights here and the noise. That committee was formed, though, before the RNAV at issue here, right? It was formed around the time the FAA indicated that it was going to be implementing the RNAV, which was in 2016, and was in place before the, you know, to work through and help work through that process. So if I may just briefly address the harms, excuse me, the reasons why the FAA's review does not meet the arbitrary and capricious standard, there are three elements here. First of all, when you consider the closely spaced parallel runways, runway four left is paralleled by runway four right. It has a 1,500-foot gap at the tarmac and 4,500 feet at the over Milton approximately. Okay. Thank you. You could finish that thought. Thank you. I'll just say that the FAA order requires analysis of cumulative impacts. Here the FAA did not. The FAA says that they cannot, but similar to their Section 106 consultation requirement, they could look at more specific smaller areas, such as like they do with schools and churches and national parks. Thank you. Thank you. Thank you, Counsel. At this time, Attorney North, you can mute your audio and video. Attorney Frankel, if you could unmute your device and reintroduce yourself on the record to begin your 15-minute argument.  Good morning, Your Honors, and may it please the Court. David Frankel on behalf of Federal Respondents. So this case concerns FAA's study of the impacts of a single flight procedure for a single runway that will add less than one additional daily arrival to Logan Airport. In doing that work, FAA produced an exhaustive environmental assessment that went above and beyond what was necessary to confirm that there would be no significant environmental impacts here. But putting aside the merits for a bit, I'd like to start where the Court did with addressing the threshold question of standing. And the fact is that Milton has not alleged, much less established with evidence, that the new procedure would result in harm to Milton's own interests as opposed to the interests of its residents. And Milton here asserts that it is voluntarily determined to expend resources to address its residents' concerns, who it believes will be harmed by greater aviation noise. But Milton can't manufacture an injury to its own interests by pointing to potential noise injuries to its residents. And spending time and money engaging with stakeholders and policymakers in the way that Milton claims here is just the basic work of municipal governance. It's not an Article III injury, in fact, caused by the 4L RNAV. And really, under Milton's expansive theory of standing, it would have it so that any time a municipality listens to a resident's concerns and then spends time and money addressing its concern, it may claim the resident's harm as its own, and therefore bring suit on its own behalf. And that's just not the law. It's contrary to black-letter limits on parens patriae standing, which holds that states and their subdivisions cannot sue on behalf of their residents. And it can't be the law. Even if Milton's theory were viable here, it has the further... Well, Ansel, I thought Milton had disavowed a parens patriae theory. And all they're arguing is putting that aside, putting associational standing aside. We suffered harm. I thought their claim was actually narrower than... You're kind of setting up straw men to attack when they may not be in the case. Yeah. Well, I mean, as a matter of form, it's true that Milton does disavow that they're trying to rely on parens patriae standing. But as a matter of substance, what they're actually doing here is trying to take potential injuries to their residents and repackage those injuries as their own by saying, to our residents' complaints by spending time or spending money. And I think that's really just an improper way to repackage a parens patriae claim. I mean, I think this court's decision in equal means equal gives some guidance here. And I think parens patriae aside, what this court held is that no entity can predicate injury in fact on a claim that it has expended resources advocating for preferred public policy outcomes. And ultimately, that's the gist of what Milton is claiming here, that it spent time and money trying to... On the comment letter for this proceeding, that it spent time and money engaging with policymakers, that it's made other voluntary efforts to address its residents' concerns. And whether you look at it in its own right as sort of an attempt to stake a resource diversion claim or whether you look at it as a repackaging of parens patriae, I think the outcome is the same, where Milton just fundamentally has not identified an injury in fact to its own interests. But even if Milton's theory were viable, it has the further problem here in that it relies entirely on unsupported allegations rather than facts that have any evidentiary basis. In a petition for review case, at the merit stage, a petitioner has a couple of options. A petitioner can rely on facts set out in the administrative record if that record on its face contains the facts necessary to show standing. But if it lacks that information, as here, a petitioner has the obligation to submit declarations or submit other evidence necessary to establish its burden to meet standing. And here, beyond its theories, Milton identifies nothing in the record supporting its purported injuries. And also, it hasn't submitted declarations or any other competent evidence. It has only allegation and conjecture. And that's not enough. So, normally, if we say that the allegations of the petition or the complaint don't on their face show standing, that ends the matter. I suppose Congress, if it wanted to, could create statutory standing in cities and towns to attack FAA orders. But that hasn't been done here. So, given the current state of uncertainty as to administrative law and what's happening to the Chevron doctrine, don't you think it's kind of wiser for us simply to rely on your Article III arguments? Yes. I mean, I think in addition to whatever prudential reasons may exist, Article III is a jurisdictional prerequisite. And to properly invoke this court's jurisdiction, Milton has to identify, both allege and prove, that they have a sufficient basis for making out all the elements of standing. And in this case, they have not done so. Do you agree, counsel, with Ms. North, that in making that determination we look not only to the allegations of the petition, but to the record as a whole? I think this court can fairly look to the record. If the record sets out facts that would help to establish standing, I don't think anything would bar this court from doing so. But there is nothing in the record to support the claim that Milton itself and its own distinct interests, as separate and apart from its residents, have suffered an injury in fact that's traceable to the action here that would be redressed by a favorable decision and that would give it the ability to sue. And the only thing they point to, and they don't point to it until the reply brief, is the assertion in the town's letter to the FAA that they were told by some people that they were selling their homes because of the noise. Correct? I'm not even aware that they've even fleshed that out in the reply in any meaningful way. No, they advert to it. I would say that there's a fleeting reference to that theory, which I think it's waived for being raised the first time on a reply, but in any event, it doesn't have any of the factual support or any of the development needed to make out that case. I'm not aware of where in the record it would say that, but wherever it is the petitioners are pointing to in this case does not make out the full chain of events that would be necessary to establish standing. And it's not so easy to make out a claim of standing based on loss of tax revenues. You can't just allege general incidental loss. You have to really make out a development. Well, she admitted there was no loss of tax revenues. I take that concession then as dispositive of that issue in addition to the other problems. If this court has no other questions on standing, I'm happy to turn very briefly to the merits. Well, I'd just like you to address briefly, if you can, Ms. North's argument that I think she tied it to the sale of the homes that the town has suffered reputational harm. Yeah. I think that comes only in a fleeting reference in the reply brief that is not developed in sort of any sufficient way. I don't think there is any factual basis in the record to show that there are, in fact, people selling homes because of noise or that is having any impact on property values or the town's reputation. I don't think there is anything necessary to sort of— I think she's alluding to sort of a chain of events that you would need to establish several factual predicates about noise and its effect on property values and its effect on reputation. And even then, I think there would probably be legal hurdles. But I think there's several factual steps there that simply are just nowhere in the record to be able to support that claim of standing. So I will turn briefly to the merits. And if this court does reach the merits, it should upheld FAA's comprehensive environmental assessment here. FAA's modeling went above and beyond what it had to do here. FAA could have approved the procedure via categorical exclusion, which is a far less detailed method of environmental review. And because of FAA's determination to be responsive to public concern over the procedure, it did one better, and it created this exhaustive environmental assessment that modeled both what the anticipated effects of the procedure would be as well as the maximum effects of the procedure. And in doing so, it modeled the sound impacts of every plane on every census block across the entire study area that could be affected, including in the town of Milton. Milton also raises some technical challenges to the underpinnings of FAA's noise model. And the bar for those is really quite high. Courts are especially deferential to agency technical choices about how to model complex phenomena within their designated area of expertise. And FAA doesn't come close. Five minutes remaining. Five minutes. Thank you. And Milton doesn't come close to establishing its burden to show that techniques used nationwide, techniques that are required by regulation and by longstanding FAA order, techniques that have been upheld by other courts, were irrational to use in these circumstances. If the court has any particular questions on any of those, I'm happy to dive deeper on any of those questions as well. Thank you, Your Honors. We'd ask the court to dismiss the petition for lack of standing or, in the alternative, deny the petition. Thank you. Thank you. Thank you, Mr. Frankel. At this time, you can mute your audio and video. Attorney North, you have a three-minute rebuttal. Please reintroduce yourself on the record to begin. Good morning. Karis North for the petitioner, Tam of Milton. I want to make two points on rebuttal. First, with respect to the modeling of the sound impacts, there is a significant missing element from that modeling. And I understand that the agency has deference, but when they fail to consider a pertinent aspect of the problem, then that analysis doesn't receive deference. So here, it's undisputed in the record that the FAA does not consider the impact of the deployment of landing gear. And this is important because landing gear must be deployed three nautical miles from the airport, but can be deployed at any time. And, again, in the record, in the town's comment letter, there are indications that landing gear is deployed as far as 10 nautical miles out over Milton. There is data, there is studies to show, and they are referenced in the town's comment letter, that landing gear can account for up to 40% of the noise from an aircraft when it's in a landing pattern. Because there is no data that addresses this noise at all, the FAA's analysis and modeling is deficient. I just want to make two quick points with respect to standing. There is a recent case cited in my reply brief from Los Angeles where the Ninth Circuit said that they found that noise impacts from the project affecting the neighborhoods were sufficient to confer standing on the city of Los Angeles. And I also wanted to note that in the Marshfield case that was decided by the circuit on the merits and not dismissed for standing, there was no issue with the standing, and that was only the town was the petitioner in that particular case. Happy to answer any further questions. Otherwise, we will rest on our briefs and ask the court to grant our petition and send this analysis back to the FAA for a more thorough review and environmental impact statement. Thank you. Thank you. Thank you. That concludes arguments in this case. Counsel, from that case, is welcome to leave the meeting at this time.